Hillsborough, Feb. 6, 1951. } No. 3981.

LYDA MAE VEINO *v.* JAMES G. VEINO.

*Maurice A. Broderick* (by brief and orally), for the plaintiff.

*James I. Hines* (by brief and orally), for the defendant.

DUNCAN, J. The reserved case erroneously recites that "this is a matter in equity." It is a petition for a legal separation, or "limited divorce" under the provisions of R. L., c. 339, ss. 24, 25. By the Constitution, jurisdiction of "all causes of marriage, divorce and alimony" is vested in the superior court "until the legislature shall by law make other provision." Const., Pt. II, *Art.* 76. This article "conferred a jurisdiction unknown to the law of England." *Clough* v. *Clough*, 80 N. H. 462, 466. "The power of the court was considered to be derived from the legislature acting under this constitutional provision and not from the ecclesiastical courts who did not possess it." *Id.*, 466. In *Parsons* v. *Parsons*, 9 N. H. 309, the court pointed out that "alimony" in its more usual acceptation at that time (1838) was applicable to an annual sum "decreed upon a separation or divorce, *a mensa et thoro*," and observed: "We have here no divorces of that character." *Id.*, 317. The decision also indicates that prior to the Revolution divorces were "supposed uniformly to have been granted by the legislature." The first legislation specifying causes for which divorces might be granted, and authorizing the use of judicial process to implement decrees of divorce, was adopted in 1791, and related to "divorces from the Bond of matrimony," with no provision for limited divorces from bed and board. 5 N. H. Laws 732. From 1791 to 1909, the authority of New Hampshire courts with respect to divorce was limited to the granting of absolute divorces. This authority of the court has consistently been deemed to be wholly statutory. *Shatney* v. *Shatney*, 76 N. H. 391; *Hartnett* v. *Hartnett*, 93 N. H. 406.

By Laws 1909, c. 68, jurisdiction was first conferred upon the courts to grant limited divorces or legal separations, such as had long previously been granted by the ecclesiastical courts of England. See *Clough* v. *Clough*, *supra*, 463, 464. This jurisdiction, like the jurisdiction to grant absolute divorces, must be regarded as strictly statutory. "No ecclesiastical courts, with a jurisdiction similar to those of England, were ever organized here" and chancery courts have never been considered to have original jurisdiction either of divorces, or of petitions by a wife "to require a settlement, or provide for a maintenance." *Parsons* v. *Parsons*, *supra*, 317, 336; *Cf. Baker* v. *Baker*, 90 N. H. 307. The jurisdiction of the Superior Court, to require a disclosure of the

husband's assets on a petition for legal separation, must therefore depend upon statutory authority. *Hartnett* v. *Hartnett, supra.*

R. L., *c.* 339, *s.* 25, provides in part: "Upon such petition the procedure shall be the same as upon libels for divorce, and the court shall have the same power in all matters relating to . . . allowances, alimony, . . . and division or apportionment of the property of the parties, as in cases of divorce." The section upon which the plaintiff relies to support the order of the court contains these provisions: "ALIMONY. Upon a decree of nullity or divorce, the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just . . . ; and may compel the husband to disclose, under oath, the situation of his property; and before or after the decree, may make such orders and use such process as may be necessary." R. L., *c.* 339, *s.* 16. The latter clause of the section formerly read: "such orders and . . . process as may be necessary to carry the same into full effect, and to protect the rights of the wife." Revised Statutes (1842), *c.* 148, *s.* 13. The change in phraseology which occurred in the revision of 1867, was intended to be "merely verbal." Comm'rs Report, [1867] iv.

The defendant, relying upon *Rowell* v. *Rowell,* 63 N. H. 222, argues that disclosure may be compelled only after a decree of divorce or separation has been entered. The *Rowell* case arose prior to the enactment of the provisions for a temporary allowance to the wife which are now contained in R. L., *c.* 339, *s.* 14 (Laws 1919, *c.* 39). The court said: "The order asked for is for alimony before there has been a decree of nullity or divorce. It is contrary to the construction of the statute, settled by long and uniform practice, and should not be made." *Id.,* 225. Obviously, the case relied upon is no longer controlling with respect to temporary allowances which are now permitted by statute. Neither do we think it controlling of the issue in this case. An order for disclosure, unlike one for alimony, can confer upon the wife no rights in the property of the husband. His substantive rights will remain unaffected, unless and until a separation (or divorce) is granted to the wife.

Literally construed, the provisions of section 16 of chapter 339 of the Revised Laws which specifically authorize compulsory disclosure, do so only "upon a decree of nullity or divorce." In this respect they do not differ materially from the original provisions for requiring disclosure by the husband of the situation "at the time of such divorce" of personal property received by him in the right of the wife. 5 N. H.

Laws, *supra*, 733. If they were the only provisions upon which the order of the Trial Court might be based, the defendant might well be sustained in his position.

The limited authority contained in the statute of 1791 was amplified by the revision of 1842, however, to provide that the court might "before or after such decree . . . make such orders and use such process as may be necessary to carry the same into full effect, and to protect the rights of the wife." R. S., (1842), *c.* 148, *s.* 13, *supra.* The authority thus conferred was plainly intended to broaden the powers of the court with respect to alimony, even if it did not extend them so far as to permit requirement of alimony in advance of a final decree. "The statutes enacted relating to alimony indicate that it was the intention of the legislature to confer upon the courts comprehensive powers and broad discretion in relation to that subject, and these statutes have so been construed by the court." *Kennard* v. *Kennard,* 81 N. H. 509, 510. See also, *Clough* v. *Clough, supra,* 466; *Whittier* v. *Whittier,* 31 N. H. 452, 458; *Sheafe* v. *Sheafe,* 24 N. H. 564. The provisions of the section on alimony, except for the last clause, specify the powers of the court in entering the decree of divorce or nullity. The final clause of the section confers broad ancillary or incidental powers, exercisable before or after the decree. There is no indication that these powers were intended to be exclusive of the powers which might be exercised upon entry of the decree of divorce. On the contrary, they have not been so regarded. Thus, an order for alimony may be entered after the decree of divorce, although the specific authority to make such an order "upon" the decree was not exercised. *Cross* v. *Cross,* 63 N. H. 444; *Sheafe* v. *Sheafe, supra. Cf.* R. L., *c.* 339, *s.* 12.

It is established that prior to a decree of divorce, the court may in its discretion permit depositions to be taken. *Clough* v. *Clough, supra.* This power may reasonably be thought to extend to the deposition of the husband. Upon trial, evidence concerning his property is competent upon the question of alimony, although a decree of divorce has not been entered. *Janvrin* v. *Janvrin,* 59 N. H. 23. Presumably the testimony of the husband may be required upon this issue and disclosure under oath thus compelled. Consistently, the statute authorizing the court to make such orders and use such process as may be necessary "before . . . the decree" for the purpose of carrying the same into full effect and protecting the rights of the wife may be taken to authorize the disclosure required by the order of the Trial Court.

A different holding would necessitate two hearings, or in the alternative require the plaintiff to accept the testimony of the defendant at the trial without opportunity to test its accuracy except by cross-examination. To require more than one hearing would be inconsistent with what is believed to be the prevailing practice in the trial of divorce cases, (see *Janvrin* v. *Janvrin, supra*) and would place a narrow construction upon the powers conferred upon the court by the revision of 1842. The Legislature plainly intended that the court should have the power to make orders before a decree of divorce or separation which might reasonably be thought necessary "to carry the [decree] into full effect, and to protect the rights of the wife." R. S., c. 148, s. 13, *supra*. It is our opinion that the order to which exception was taken was such an order.

While entry of an order for disclosure before the decree should be the exception rather than the rule, the issue of the necessity for it is one within the discretion of the Trial Court. The implied finding in this case that the disclosure ordered may be necessary to make a final decree effective was not unwarranted as a matter of law.

*Exception overruled.*

All concurred.