Hillsborough
No. 78-263

ROBERT W. WALKER

v.

JUDITH F. WALKER

(NOW BARKER) & a.

July 18, 1979

*Lesieur & Boyer*, of Nashua (*Leo R. Lesieur* orally), for the plaintiff.

*Brown & Nixon P.A.*, of Manchester (*Randolph J. Reis* orally), for the defendant.

LAMPRON, C.J. This is an action by the plaintiff for a declaratory judgment and injunctive relief. The plaintiff requested that the court

declare invalid the appointment of a commissioner to sell real estate pursuant to a divorce decree and that the court enjoin the commissioner from selling the property. The Trial Court (*Flynn*, J.) ruled that the superior court possessed the authority to appoint such a commissioner and found that no grounds existed for his removal. The plaintiff excepted to these findings and rulings, and a reserved case was transferred. We overrule plaintiff's exceptions.

In June 1975, a divorce decree was entered in an action commenced by the defendant, Judith Walker, against the plaintiff. That decree permitted Mrs. Walker to occupy the parties' jointly owned house until their daughter became eighteen or Mrs. Walker remarried or vacated the premises. Upon the happening of one of these events, the property was to be sold "as soon as practicable" and the net proceeds of the sale were to be divided equally between the parties.

In October 1976, when Mrs. Walker remarried, she attempted to sell the house. She was unable to do so, however, allegedly because her former husband repeatedly refused to cooperate. Early in 1977, Mrs. Walker (now Mrs. Barker) filed a motion requesting that the superior court appoint a commissioner to sell the property in accordance with the provisions in the divorce decree. On March 2, 1977, after a hearing before a master, the court granted the motion and appointed a Commissioner (*Frank B. Clancy*, Esq.), whose fee was to be deducted from Mr. Walker's equity in the house. There was no transcript, and the plaintiff did not except to or appeal the court order.

In April 1977, the commissioner obtained a property appraisal, and in May he discussed the sale with both parties separately. At that time, Mr. Walker indicated he wanted to postpone the sale, did not want to pay a real estate commission of 7% or the commissioner's fee, and wished to avoid a public sale. In June, the commissioner hired a realtor who advertised the property throughout the summer. By September, the realtor was unable to locate serious buyers, and he requested the commissioner to make other arrangements to sell the property. The commissioner took no further action regarding the sale until January 1978. He testified that this was due primarily to Mr. Walker's efforts during this period to have him removed.

Mr. Walker first filed a motion seeking removal of the commissioner in August 1977. While the motion was pending the commissioner contacted Mrs. Barker's attorney periodically regarding the status of the court proceedings. The motion was denied in December 1977, and was not appealed. The commissioner then resumed his duties and arranged for a public sale. In January 1978, he advised the parties that the sale would occur in March. In February

1978, Mr. Walker filed a second motion requesting a ruling on the court's authority to appoint a commissioner. The court denied this motion on March 15. Even before this motion was denied, Mr. Walker filed a third motion on the same issue on March 2. Then, on March 8, he filed the present petition for declaratory and injunctive relief based on these same issues. The court granted the petition for a temporary injunction. After a hearing, however, the court denied permanent relief.

This case presents two issues: whether the trial court erred in ruling that it had authority to appoint a commissioner to sell the parties' real estate under these circumstances; and whether the trial court should have removed the commissioner for cause.

■ The court's authority in matters of marriage and divorce is strictly statutory. *Veino v. Veino*, 96 N.H. 439, 78 A.2d 522 (1951); *Hartnett v. Hartnett*, 93 N.H. 406, 43 A.2d 153 (1945). RSA 458:19 empowers the superior court to decree alimony and make property divisions. The last clause of this statutory provision authorizes the court to "make such orders and use such process as may be necessary." This clause has been interpreted as conferring "broad ancillary or incidental powers, exercisable before or after the decree." *Veino v. Veino supra* at 442, 78 A.2d at 524.

■ Appointment of a commissioner when one party refuses to cooperate in dividing marital property is widely recognized. The court can direct:

> the making of a conveyance by a representative of the court if the party fails or refuses to make it... [t]here is nothing peculiar in its application, where necessary, to carry out what the court is empowered to do by way of adjustment of rights and interests.

2 W. NELSON, DIVORCE AND SEPARATION § 16.01, at 383–84 (2d ed. 1961); *see* 24 Am. Jur. 2d *Divorce and Separation*, § 942 (1966). Indeed, courts in a number of States have authorized this procedure. *See, e.g., Rummel v. Rummel*, 265 N.W.2d 230 (N.D. 1978); *Robinson v. Robinson*, 37 Wash. 2d 511, 225 P.2d 411 (1950); *Harbin v. Harbin*, 12 Mich. App. 320, 162 N.W.2d 822 (1968). Because this is a widely recognized practice, and the New Hampshire divorce statute permits the use of such ancillary powers, we hold that the superior court had the authority to appoint a commissioner to sell the parties' real estate if warranted by the circumstances of this case.

 There was sufficient evidence of recalcitrance by the plaintiff to support the trial court's finding that a commissioner was needed. The transcript and exhibits in the present case contain numerous indications of the plaintiff's failure to cooperate in the sale of the property. For instance, Mrs. Barker testified, "Every time I talked with Mr. Walker about it, he became very emotional, started swearing at me, threatened me." The function of this court is to determine whether any evidence existed on which the court below could base its determination. *Hardware Mutual Casualty Company v. Hopkins*, 106 N.H. 412, 213 A.2d 692 (1965). Such evidence was clearly present. *See Ballou v. Ballou*, 95 N.H. 105, 58 A.2d 311 (1948). Therefore, we sustain the trial court's appointment of the commissioner.

We next address whether the trial court erred in finding that no grounds existed for removing the commissioner. The plaintiff asserts that the commissioner acted in a biased and irresponsible manner, which denied him due process and hindered the house sale. Specifically, he cites the commissioner's *ex parte* discussions with Mrs. Barker and her attorney, the commissioner's failure to take action for several months, and his decision to hold a public sale.

 Regarding the *ex parte* discussions, Mr. Walker objected to the commissioner's failure to include him in a meeting with Mrs. Barker and her attorney at which the house sale was discussed. The plaintiff alleges that this shows the commissioner's bias. The record demonstrates, however, that the commissioner tried unsuccessfully to reach Mr. Walker by telephone and when he did, it was evident that no cooperation would be forthcoming. When Mr. Walker obtained counsel, the commissioner communicated with him. The other *ex parte* discussions related to the professionally completed property appraisal and the status of Mr. Walker's court proceedings to remove the commissioner. The trial court could justifiably conclude that these discussions did not deprive Mr. Walker of his constitutional rights, did not show bias, and did not affect the proposed sale of the house.

The evidence demonstrates that the commissioner was inactive between September and December of 1977 because he was awaiting the outcome of the plaintiff's efforts to have him removed. Once Mr. Walker's motion, which had been filed in August, was denied in December, the commissioner resumed his duties. The record also shows that the commissioner made arrangements in January for a public sale in March because his previous efforts to sell the house privately were unsuccessful. The trial court could find on the evidence that both the commissioner's delay and his decision to hold a public

sale were reasonable under the circumstances and did not constitute grounds for his removal. We uphold the trial court's decision. *See Callaghan v. Callaghan,* 108 N.H. 264, 233 A.2d 825 (1967).

█ This appeal represents the *fourth* time the plaintiff has litigated these same issues and the *fourth* time he has been denied relief. Over two years have passed since the commissioner's appointment in March 1977, and still the house remains unsold. The plaintiff's persistent legal machinations have substantially caused the delay. The plaintiff's conduct brings this case within the scope of RSA 490:14-a (Supp. 1977), which imposes penalties for appeals that clearly appear to be frivolous, immaterial, or intended for delay. Thus, on our own motion, we award defendant double the costs of appeal. *Wright v. Wright,* 119 N.H. 102, 398 A.2d 837 (1979); RSA 490:14-a (1977). These costs may be collected by the defendant from the $4,500 cash bond that was posted when the temporary injunction enjoining the sale of the property was granted.

*Plaintiff's exceptions overruled.*

All concurred.