Hillsborough,
No. 5326.

HARDWARE MUTUAL CASUALTY COMPANY

*v.*

CLYDE H. HOPKINS & a.

Argued May 4, 1965.
Decided October 5, 1965.

*Sullivan, Gregg & Horton* (*Mr. James L. Sullivan* orally), for the plaintiff.

*Upton, Sanders & Upton* (*Mr. Robert W. Upton* and *Mr. John H. Sanders* orally), for the defendants Smith.

*Brighton, Fernald & Taft* (*Mr. Richard R. Fernald* orally), for the defendants Garabrant.

*Cofran, Quint & Greenhalge* (*Mr. George P. Cofran* and *Mr. L. Wilder Quint* orally), for the defendant Merchants Mutual Insurance Co.

WHEELER, J. Petition for declaratory judgment brought by Hardware Mutual Casualty Company against its insured, Clyde H. Hopkins, doing business as Hopkins Garage, and also against Merchants Mutual Insurance Co., Russell Garabrant, Kenneth Garabrant, Willard E. McGinnis, Jr., J. Gilbert Smith, Gladys Smith; J. Gilbert Smith, Administrator of the estate of Deborah Smith; J. Gilbert Smith, Administrator of the estate of Geoffrey Smith, and against Joel Smith.

The defendant Kenneth Garabrant, a minor residing with his parents, Russell and Margaret Garabrant, was, on December

10, 1961, the operator of, and Willard E. McGinnis, Jr. was a passenger in, a certain motor vehicle owned by Clyde H. Hopkins and insured by the plaintiff, Hardware Mutual Casualty Company, which collided with an automobile owned by J. Gilbert Smith in which his wife Gladys and their minor children, Deborah, Geoffrey and Joel were passengers. As a result of this collision, Mr. and Mrs. Smith and Joel were injured and Deborah and Geoffrey suffered injuries which resulted in their death.

Civil actions have been brought against Kenneth Garabrant by J. Gilbert Smith seeking damages for his injuries and consequential damages for his wife Gladys and his minor son Joel's injuries; and said Smith, as administrator of the estate of Geoffrey seeks damages for his injuries and death; and as administrator of the estate of Deborah seeks damages for her injuries and death. Gladys Smith has also filed a civil action for her injuries, and Joel Smith, by his father and next friend, J. Gilbert Smith, also seeks recovery for his injuries.

In its petition, Hardware contends that the vehicle operated by Kenneth was loaned by Hopkins, d/b/a Hopkins Garage, to Kenneth's father, Russell, for the latter's use only, and that Kenneth was operating the vehicle not only without Hopkins' consent but in violation of the latter's express directions, and that its policy affords no coverage for Kenneth's liability.

The pertinent provisions of Hardware's policy provide:

"III Definition of Insured. With respect to insurance under coverages A (Bodily Injury Liability) . . . the unqualified word 'insured' includes the named insured and also includes . . . (2) any person while using an automobile covered by this policy . . . provided the actual use of the automobile is . . . with [the] permission" of the named insured.

After hearing on the petition, the Court (Loughlin, J.) ruled that Hardware Mutual Casualty Company under its policy was not obligated to defend the actions. The Court further ruled that Merchants Mutual Insurance Co. was obligated to defend the actions by virtue of Kenneth H. Garabrant's "non-owner" policy but Merchants was not obligated to defend the actions under its family automobile policy.

Defendants Smith concede that the major issue in their case against the plaintiff is whether Kenneth had permission, expressed or implied, to operate the 1957 Pontiac on the day of the accident and that their case stands or falls on the granting of plaintiff's request for rulings of law Nos. 14 and 15, which were "granted as questions of fact" and are as follows:

"14. That there is no evidence that the vehicle involved in the accident (1957 Pontiac) was ever entrusted to the possession of Kenneth Garabrant by Clyde Hopkins, d/b/a Hopkins Garage.

"15. That there is no competent evidence that Kenneth Garabrant ever had the permission of Clyde Hopkins, d/b/a Hopkins Garage, to operate the vehicle involved in the accident (1957 Pontiac)."

The defendants Smith excepted to the granting of these requests on the grounds that they were contrary to the evidence, that there is evidence the vehicle involved in the accident was entrusted to the possession of Kenneth by Clyde Hopkins, and that they are plainly erroneous and prejudicial.

They properly point out that in a petition for declaratory judgment the burden of establishing coverage is upon the defendants and on the issue raised by their exceptions to the granting of requests 14 and 15 they are entitled to the most favorable construction of the evidence. *Standard &c. Ins. Co.* v. *Gore,* 99 N. H. 277, 280. They contend that there is ample evidence to support their contention that the 1957 Pontiac was entrusted to the possession of Kenneth by Clyde Hopkins with his permission to operate the vehicle.

The evidence offered in support of these contentions may be briefly summarized as follows: Russell Garabrant had for some time been a customer of Clyde Hopkins. The 1958 Pontiac was purchased in 1959 by Russell from the Hopkins Garage for his wife, Margaret, who could not drive a motor vehicle. The vehicle was operated by Russell and his son Kenneth. His parents had priority of use but otherwise Kenneth was not restricted by them in the use of the motor vehicle. The air suspension system in the 1958 Pontiac ceased to function properly and had been to the Hopkins Garage several times for repair. In November, 1961, Mr. Garabrant ordered conventional springs and shock absorbers to replace the air suspension system which broke down again before the springs and shock absorbers arrived. Kenneth took the vehicle to the Hopkins Garage to remain until the springs and shock absorbers could be installed. Wayne Hopkins said to Kenneth, "I suppose you need a car or have to have another car to use" and Kenneth replied, "I'd like one." Wayne attached some dealer's plates to a 1956 black and white Pontiac, drove to the gasoline pumps and put in a couple of dollars worth of gas and Kenneth drove off.

Kenneth used the car on Tuesday evening to visit a friend in Peterborough, and on Wednesday morning, December 6, when

Russell arrived at the parking lot at his place of employment, Wayne was working about another car and told Russell that the 1956 Pontiac had to be returned to the garage for some body work and he would replace it with another car. On leaving for work that afternoon, Russell found that the 1956 Pontiac had been replaced by a 1957 Pontiac with garage number plates. On that evening Kenneth drove the car to a basketball game in Peterborough. On Wednesday afternoon Chief Picard called on Clyde Hopkins and reported that Kenneth had been seen speeding in the 1956 Pontiac.

On Thursday, December 8, Russell drove the 1957 Pontiac to the garage to have the radiator checked and was told by Wayne that they had a report that Kenneth was speeding in town and that he did not want him speeding in the car. On the following Friday evening Kenneth again used the 1957 Pontiac to attend a basketball game in Jaffrey, picking up a friend in Peterborough on the way. On Saturday evening he again went on a trip which ended with the accident in Leominster on Sunday morning.

There was other evidence that a year previous a car had been loaned to Russell Garabrant without restrictions. Hopkins had a car loan agreement in which the borrower signed an agreement that he was the sole authorized operator and assumed full responsibility for its use. This agreement was not signed by Russell and was seldom ever used by Hopkins. The only reason advanced by Hopkins for refusing Kenneth the use of the 1957 Pontiac was that it was the policy of the garage not to loan cars to minors. This policy was not rigorously adhered to, since the evidence revealed that on a number of occasions minors had been permitted to operate their motor vehicles.

The defendants contend that this evidence warrants a finding that on December 4, 1961, when Kenneth turned over the family car to Hopkins he was loaned the 1956 Pontiac with general permission to use it as a substitute for the family car and that the later substitution of the 1957 Pontiac was for like use. They further contend that the evidence warrants a further finding that regardless of the terms upon which the 1956 Pontiac was entrusted to Kenneth when Hopkins told Russell "that they had a report from the Chief that Kenneth was speeding in town" and that "he didn't want him speeding . . . in the car" he acquiesced in and consented to Kenneth's use of the 1957 Pontiac as a substitute for the family car. In summary, they argue that

this evidence warrants a finding that at the time of the accident Kenneth was operating the 1957 Pontiac with either the express or implied consent of the Hopkins Garage. *Standard &c. Ins. Co.* v. *Gore, supra*.

Defendant Merchants likewise contends that their evidence warrants a finding that there was permissive use of the Hopkins vehicle, either express or implied. It further contends that the plaintiff's evidence in many instances is incredible and in part false and unworthy of belief as a matter of law.

"This court has no jurisdiction of questions of fact determined in the Superior Court by the presiding judge. The only questions that can be raised here are (1) whether there was any evidence in support of the finding and (2) whether the finding clearly appears to involve a plain mistake." *Wisutskie* v. *Malouin*, 88 N. H. 242, 243. The Trial Court is not bound to accept the testimony of any witness but may accept parts and reject other parts and may adopt one or the other of inconsistent statements. *Hebert* v. *Railroad*, 90 N. H. 324. The only function of the court here is to determine whether there is any evidence from which the Court below could draw its conclusions.

In summary, by granting certain findings and rulings requested by the plaintiff the Court found that during December, 1961, Russell Garabrant had for some time been a customer of Clyde Hopkins and that in the early part of 1959 purchased a new, 1958 Pontiac convertible from him which was purchased in the name of Margaret S. Garabrant, wife of Russell. Thereafter, prior to December, 1961, they began to have trouble with the air suspension system of the above mentioned automobile. On the morning of December 4, 1961, Kenneth Garabrant, minor son of Russell, brought the Pontiac to Hopkins Garage and told Wayne H. Hopkins, the service manager and shop foreman, that the air suspension system was not functioning properly. Wayne permitted him to take a 1956 Pontiac for the sole use of his father, Russell, in conducting his affairs in and around the Sharon-Peterborough area while his vehicle was being repaired by Hopkins. The use of the 1956 Pontiac was expressly denied to Kenneth and was expressly limited to the use of his father, Russell, by Wayne Hopkins. On December 6, 1961, the loaned 1956 Pontiac was taken back by Wayne Hopkins and a 1957 Pontiac was substituted therefor.

On December 8, 1961, Wayne Hopkins encountered Russell Garabrant at his garage and told him that he had heard Ken-

neth had been speeding in the 1957 Pontiac and expressly told Russell that Kenneth should not have been driving the car and should not use it at any time in the future. The Court further found, in substance, that permission was never given by Clyde Hopkins or by Wayne Hopkins or any agent or employee of the Hopkins Garage that Kenneth be permitted to operate either of the garage vehicles previously described.

By granting certain plaintiff's requests for finding the Court further found that the use of the 1956 Pontiac was expressly denied to Kenneth Garabrant beyond delivering it to the New Hampshire Ball Bearing plant parking lot and that Kenneth did not clearly and unequivocally deny that there were restrictions against his operating this vehicle.

Although defendants Smith argue that the granting of plaintiff's requests for rulings of law Nos. 14 and 15 vitiate the Court's decree as to Hardware's liability, we are of the opinion that the granting of these requests by the Court as "questions of fact" together with all the other findings and rulings made by the Court support and warrant the decree.

It was further found that on or about December 8, 1961 Wayne Hopkins told Russell Garabrant that he had heard Kenneth had been speeding in the 1957 Pontiac and expressly told him that Kenneth should not use it in the future. The prohibition against Kenneth using this vehicle was again repeated by Wayne Hopkins on or about December 9, 1961 to Russell Garabrant. At no time did Hopkins Garage or any of its agents have personal knowledge that Kenneth was using either of the loaned vehicles with the exception of the delivery of the 1956 Pontiac by Kenneth. These findings are supported by the evidence.

The facts in this case do not fall within the category that the evidence is incredible as a matter of law, nor do they require a finding that Kenneth had permission expressed or implied to operate the 1957 Pontiac on the day of the accident. *Gilliam* v. *Waltsons Corporation,* 105 N. H. 373, 376. Defendants' exceptions to the Court's finding that plaintiff Hardware Mutual Casualty Company is not obligated under the terms of its policy are overruled.

We turn next to consideration of the coverage afforded by the two Merchants Mutual Insurance Co. policies issued to the Garabrant family.

At the time of the accident, the defendant Merchants Mutual Insurance Co. had in effect two policies, one a "non-owner"

policy issued to Kenneth A. Garabrant. The other was a Combination family automobile policy issued to Margaret S. Garabrant covering a 1959 Pontiac automobile which she owned and which was undergoing repairs at the time of the accident.

The pertinent provisions of Kenneth's policy provided:

"I. Coverage A — Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Under Item 8 of the policy declaration "Description of Automobile" the words "Non Owner Cov." were inserted. Attached to the policy was a "Non-Owner Policy — New Hampshire" endorsement which contained the following pertinent provisions:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability . . . applies with respect to the use of any automobile by or on behalf of the named insured . . . . "

This endorsement contained the further provision:

"2. The insurance does not apply:

"(a) . . . to any automobile owned by the named insured or a member of the same household."

The applicable provisions of the family automobile policy issued to Margaret provide:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: (A) bodily injury . . . including death resulting therefrom . . . sustained by any person . . . arising out of the . . . use of the owned automobile . . . or any non-owned automobile . . . . "

The policy defines the "insured" as follows:

"Coverage A — Persons Insured: The following are insureds under Part I; (a) With respect to the owned automobile, (1) the named insured and any resident of the same household."

"Owned Automobile" further is defined as "a private passenger . . . automobile . . . owned by the named insured, and includes a temporary substitute automobile."

A "temporary substitute automobile" is defined as "any automobile . . . not owned by the named insured, while temporarily used as a substitute for the owned automobile . . . when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The Court ruled that Merchants' "non-owner" policy issued

to Kenneth afforded coverage, but ruled that coverage was not provided by the "Family" policy which it issued to Margaret Garabrant. Merchants argues that the policy issued by Hardware should be held to afford primary coverage, and that only one of the Merchants' policies can properly be held to afford excess coverage.

Under the "non-owner" policy, coverage was excluded as to any automobile owned by the named insured Kenneth or by a member of the same household. Under the "Family" policy coverage was afforded to Kenneth with respect to the named automobile or a "temporary substitute" automobile not owned by Mrs. Garabrant. From this Merchants argues that if the vehicle owned by Hopkins is to be treated as a vehicle not owned by a member of Kenneth's household, so as to afford coverage under his "non-owner" policy, then it should follow that it cannot also be regarded as a substitute for the vehicle owned by Margaret Garabrant under her "Family" policy; and on the other hand if it is to be regarded as a "substitute" under the latter policy, then it should be regarded as a vehicle owned by Mrs. Garabrant, who was "a member of the same household" under the "non-owner" policy. With these contentions we cannot agree.

Margaret S. Garabrant is the wife of Russell. Their son Kenneth, a minor, at the time of the accident resided with them. It is not seriously disputed that Kenneth was a "resident of the same household" and thus a "person insured" under the family policy. *Travelers Ins. Co.* v. *Kipp,* 105 N. H. 200, 202.

It is conceded that the 1957 Pontiac involved in the accident was a "temporary substitute automobile" owned by Hopkins. The fact that Kenneth did not have permission from Hopkins to drive the garage car does not change its status as a "temporary substitute automobile." "The coverage afforded the insured by the policy and statutory endorsement insured him in the operation of any [substitute] motor vehicle not owned by him." *Hartford &c. Ind. Co.* v. *Come,* 100 N. H. 177, 181. It has been held that a stolen motor vehicle may become a temporary substitute automobile. *Densmore* v. *Hartford Indemnity Co.,* 221 F. Supp. 652 (W. D. Pa. 1963).

As defendants Smith point out, the fact that Kenneth became an "insured" by the terms of the combination family insurance policy issued to Margaret and entitled to coverage is not in conflict with his rights under the "non-owner" policy. The two

policies, although issued by the same company, are to be read and construed separately.

We hold that Kenneth's "non-owner" policy and the combination family insurance policy both afford coverage and Merchants is obligated to defend the actions.

*Defendants Smith's exceptions sustained in part and overruled in part.*

*Defendant Merchants' exceptions overruled.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting in part*: I find it impossible to sustain on a basis of the record certain of the special findings or rulings made by the Trial Court in granting the plaintiff's requests, in particular its requests for rulings of law 14 and 15 which in effect called for a directed verdict for the plaintiff, and its requests for findings of fact 7, 21 and 22 as they relate to geographical limits. These errors must be considered to have affected or contributed to the ultimate ruling that the plaintiff is not obligated to defend the pending actions. I would order a new trial with respect to the obligation of the plaintiff under its policy, and accordingly dissent from so much of the foregoing opinion as relates thereto. I concur in the holding that the defendant insurer is obligated to provide coverage under both of its policies.