## TURNER CONSTRUCTION COMPANY, Plaintiff–Appellant,

v.

## ACE PROPERTY & CASUALTY INSURANCE CO., Defendant–Appellee.

### Docket No. 04–6641–CV.

United States Court of Appeals, Second Circuit.

Argued Aug. 30, 2005.

Decided Oct. 28, 2005.

Edwin L. Doernberger, Saxe, Dornberger & Vita, P.C., Hamden, Connecticut, for Plaintiff–Appellant.

C. Michael Johnson, Fellows, Johnson & La Briolla, LLP (Frederic R. Mindlin and Antoinette Banks, Mound, Cotton, Wollan & Greengrass, New York, New York; Laurie E. Dugoniths, Fellows, Johnson & LaBriola, LLP, on the brief), Atlanta, Georgia, for Defendant–Appellee.

Before: WALKER, Chief Judge, CALABRESI and STRAUB, Circuit Judges.

Judge STRAUB dissents in a separate opinion.

JOHN M. WALKER, JR., Chief Judge.

This dispute requires us to construe an insurance policy issued by Defendant–Appellee ACE Property & Casualty Insurance Co. (ACE) to Plaintiff–Appellant Turner Construction Co. (Turner) to insure against property damage to a Texas construction project. ACE argues that the policy's high "wind deductible" applies to damages caused by rain where rain entered the insured premises by way of wind-caused openings; Turner argues that the policy's much lower general deductible applies.

In February 2004, Turner sued ACE in the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*) based on ACE's failure to pay Turner's claim for damages to the insured premises. In December 2004, the district court granted summary judgment to ACE, holding that the policy's wind deductible applied to Turner's claim and that, because the amount of the deductible exceeded the amount of the claim, ACE owed nothing to Turner. Following this appeal by Turner, we hold that the lower general deductible applies and reverse the district court's judgment in favor of ACE.

## I. BACKGROUND

The relevant facts are undisputed. Turner, a New York corporation, was the general contractor on a hotel construction project at the Houston Convention Center in Houston, Texas. Turner purchased a "Builder's Risk" policy from ACE, a Pennsylvania corporation, to insure against damages to the project. During the policy period, the project was damaged by rain that entered through openings caused by wind. Turner submitted a claim to ACE for the damage; ACE did not pay, and Turner brought this federal suit seeking damages for ACE's nonpayment. The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and we have jurisdiction under 28 U.S.C. § 1291.

ACE moved for summary judgment in June 2004 based on stipulated facts and the relevant provisions of the policy. The relevant coverage provisions are as follows:

A.3. COVERED CAUSES OF LOSS.

Covered Causes of Loss means risks of direct physical loss to Covered Property, except those causes of loss listed in the Exclusions.

B. EXCLUSIONS

. . . .

2. We will not pay for loss caused by or resulting from any of the following

. . . .

. . . .

n. Rain ... whether driven by wind or not, to Covered Property, unless located within a fully enclosed structure and then only for such loss that is caused by or results from rain ... entering through an opening caused by a Covered Cause of Loss not otherwise excluded.

The other key provisions are those specifying deductible amounts. The policy declarations provide for a $25,000 deductible for losses caused by earth movement or flood and a general $10,000 deductible for "all other covered causes of loss." An endorsement, however, provides that "[a] wind deductible of 1% of the value in place at the covered property location at the time of loss applies subject to a $100,000. minimum."

Turner filed a claim with ACE for approximately $1.3 million in damages. The parties agree that if the "wind deductible" applies to Turner's claim, ACE will owe nothing to Turner, because 1% of the covered property's value (the wind-deductible amount) exceeds $1.3 million (the amount of damages). The district court agreed with ACE that the wind deductible applies and therefore granted summary judgment to ACE. Turner appeals.

## II. DISCUSSION

We review de novo the district court's grant of summary judgment. *See Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 763 (2d Cir.2002). This case presents only issues of contract interpretation, which we likewise review de novo. *See Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 198 (2d Cir.2003). We apply Texas law, which the district court applied and which the parties agree governs.

The district court held that the wind deductible applies because the rain that damaged the property entered through an opening caused by wind. *Turner Constr. Co. v. ACE Property & Cas. Ins. Co.,* No. 04 Civ. 1421, slip op. at 6 (Dec. 1, 2004). We disagree.

The term "wind deductible" is not defined by the policy. Doubtless it applies to damage directly caused by wind; if a tornado leveled Turner's project, the wind deductible would apply. The damage in this case, however, was directly caused by rain, and only indirectly caused by wind. In other words, although wind created the opening through which the rain entered, it was the rain alone that caused the damage at issue.

Nothing in the policy suggests that the wind deductible applies to damages only indirectly caused by wind. As the district court correctly noted, Texas law requires us to construe ambiguities in an insurance policy against the insurer. *See Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex.2003); *State Farm Fire & Cas. Ins. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex.1998); *Ramsay v. Md. Amer. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976). Because the policy's "wind deductible" provision is ambiguous, in that it does not unambiguously apply to damages caused only indirectly by wind, we construe it to reach only those damages caused directly by wind.

The district court placed great weight on the fact that rain, including rain "driven by wind," is an excluded cause of loss unless

the rain enters an enclosed building through an opening caused by a "Covered Cause of Loss not otherwise excluded." Because wind was the "Covered Cause of Loss" that created the opening through which rain entered Turner's building, the district court reasoned that "the wind deductible is necessarily implicated." ACE urges us to follow this reasoning, arguing more generally that where rain damage is at issue, the relevant deductible is the deductible for the "Covered Cause of Loss" that creates the opening through which rain enters a property.

ACE's argument is plausible but not compelling. In light of Texas law's requirement that an ambiguous insurance policy be construed against its drafter, we agree with Turner that "Rain . . . entering through an opening caused by a Covered Cause of Loss," policy ¶ B.2.n., is a covered cause of loss in its own right. Indeed, we believe that this is the most natural reading of the policy language.

The dissent, in contrast, argues that it is unnatural "to view rain as an independent Covered Cause of Loss when rain can never independently cause a covered loss." According to the dissent's interpretation, "there is no such thing as 'rain damage' as a separately covered loss." We respectfully disagree.

As a factual matter, rain damage will sometimes, as in this case, be easily distinguishable from damage caused by other forces. If, for example, wind blew off a building's roof and rain entered, destroying a valuable manuscript by thoroughly soaking it, the wind and rain damage would be distinct and easily identifiable. And as a matter of elementary logic, the proposition "not A, unless B" is exactly equivalent to "if B, then A." *See* Graeme Forbes, *Modern Logic: A Text in Elementary Symbolic Logic* 23 (Oxford U. Press 1994). The policy language says, in effect,

"Rain is not a covered cause of loss, unless it enters a building as the result of a different covered cause of loss." This is logically equivalent to saying, "If rain enters a building as the result of a different covered cause of loss, rain is a covered cause of loss." The dissent's argument as to the nonexistence of rain damage as a covered cause of loss thus flies in the face of both reality (rain really does cause damages that are different from those caused by wind, fire, and earthquakes) and formal principles of logic.

Nothing in the dissent's citations to treatises and cases relating to windstorm insurance alters our analysis. The policy in this case is not a windstorm policy, and the deductible at issue is a "wind" deductible, not a "windstorm" deductible. Why should a wind deductible apply to damages not directly caused by wind? The dissent's point would be stronger if the policy included a "windstorm" deductible, which might apply both to wind damage and to damage relating to storms—for instance, rain damage. But ACE wrote "wind," not "windstorm," and our construction of the policy language protects ACE to exactly the extent it could expect in light of the background legal rule that under Texas law, ambiguous insurance policies are construed against the insurer. *See, e.g., Sink,* 107 S.W.3d at 551.

Finally, we find authority about windstorm policies unhelpful because the policy in this case covers rain damage that follows events other than windstorms. Multiple covered causes of loss, not just wind, could create openings through which rain might enter an insured property and damage its interior. Were we to follow ACE's (and the dissent's) interpretation, rain damage could be subject to three different deductibles, depending on which covered cause of loss permitted the rain to enter an insured building. If rain entered through

a crack in the building caused by an earthquake, the rain damage would be subject to a $25,000 deductible for damage from earth movement; if rain entered after a fire burned through the building's roof, that rain damage would be subject to the general $10,000 deductible; and if rain entered through wind-caused openings, the ensuing rain damage would be subject to the wind deductible of the greater of $100,000 or 1% of the building's value.

Nothing in the policy language leads us to believe that damage attributable to the action of rain should be subject to different deductibles depending on how the rain entered an insured property. We therefore conclude that the relevant deductible in this case is not the "wind deductible," but the policy's $10,000 deductible for "all other covered causes of loss."

## III. CONCLUSION

The judgment of the district court is REVERSED.

STRAUB, Circuit Judge, dissenting.

I respectfully dissent. In my view, the plain language of the policy indicates that rain is not an independent "Covered Cause of Loss" and that damage caused by rain entering through a wind-created opening is properly understood as wind damage subject to the wind deductible. This reading is confirmed by the commonly understood scope and nature of "windstorm" protection in the Texas insurance industry, and, in my view, the majority's finding of ambiguity (and application of the rule of *contra proferentum*) is contrary to how a reasonably knowledgeable observer would view the policy.

The majority, in the first instance, focuses on the language of wind deductible, but the threshold issue is whether rain constitutes an independent "Covered Cause of Loss," as defined in the policy. Paragraph A.3 of the policy provides: "Covered Causes of *Loss* means risk of direct physical *loss* to Covered Property, except those causes of *loss* listed in the Exclusions." Paragraph B lists the "Exclusions," and ¶ B.2 states that the insurer "will not pay for *loss* caused by or resulting from any of the following," including:

> n. Rain . . ., whether driven by wind or not, to Covered Property, unless located within a fully enclosed structure and then only for such *loss* that is caused by or results from rain . . . entering through an opening caused by a Covered Cause of *Loss* not otherwise excluded.

Because rain is listed in the Exclusions and can never, by itself, create a covered loss, the natural reading of ¶ A and ¶ B.2.n is that rain is not a Covered Cause of Loss. The "unless . . . and then only" clause in ¶ B.2.n does not convert "rain . . . entering through an opening caused by a Covered Cause of *Loss*" into a distinctly covered event. It simply limits the force of the rain exclusion. That is, the clause gives the insured protection from a covered event (in this case, wind) and all the damages flowing from it, despite the fact that some of the damage has also been caused by an excluded event (rain). The "unless . . . and then only" clause thus distinguishes the rain exclusion from, for example, the exclusions in ¶ B.1, which apply to "*loss* caused directly or indirectly by any of the following . . . regardless of any other cause of event that contributes concurrently or in any sequence to the *loss*." In sum, my wholly logical reading is that rain is never a Covered Cause of Loss as defined under the policy, and even where rain in fact causes damage, that damage is attributed to the Covered Cause of Loss that caused the opening and allowed in the rain.

The majority criticizes my interpretation, in part, because this reading would

subject rain damage to three different deductibles depending on whether the rain entered through an opening caused by wind, fire, or earth movement. But under my interpretation, there is no such thing as "rain damage" as a separately covered loss. In a case such as this one, there is only one Covered Cause of Loss, which results both in damage to the outside of the structure (the opening directly caused by the covered event, *e.g.*, the wind) and damage to the inside (water allowed in by the wind-blown opening). All things being equal, because there is only one relevant cause of loss, there is only one applicable deductible for any given occurrence.

In contrast, under the majority's view, "rain damage" is inherently subject to two potential deductibles: one deductible for the rain (the general deductible) and one for the Covered Cause of Loss that caused the opening (the wind deductible). The majority resolves this problem by narrowing the scope of the wind deductible, but the point is that the problem does not need to exist at all. The problem of competing deductibles only arises by viewing "rain damage" as a distinct covered loss despite the fact that rain alone is not a covered event. Overall, it only complicates matters, and is hardly natural, to view rain as an independent Covered Cause of Loss when rain can never independently cause a covered loss.[1]

Moreover, the practice in Texas's insurance industry strongly supports the insurer's position. In the insurance industry, "windstorm" coverage commonly protects against hurricanes (as well as tornados), with a proviso excluding "loss caused by water whether driven by wind or not, unless the building first sustains actual damage by direct force of wind, and water enters the building through openings made by direct action of wind." 11 Couch on Insurance § 153:19; *see also U.S. Fid. & Guar. Co. v. Morgan*, 399 S.W.2d 537, 538 (Tex.1966) (involving example of such a wind policy); 46 Tex. Jur.3d: Insurance Contracts and Coverage § 842 ("Frequently, windstorm insurance policies provide that the insurer is not liable for damage to the interior of an insured building from rain or water unless the rain or water enters through openings in the roof or walls made by the direct action of wind or hail."). *See generally* 93 A.L.R.2d 145, §§ 2, 17 (discussing windstorm policies and issues arising out of standard provisions excluding rain damage unless caused by rain entering through a wind-created opening). Indicative of the industry practice in Texas (though not directly affecting this case), the Texas Legislature has created the Texas Windstorm Insurance Association to provide windstorm, hail, and fire insurance for individuals in designated high-risk areas of the state. *See* Tex. Ins.Code Ann. art. 21.49, § 1 (2000).[2] Insurance issued by that association "must include coverage for wind-driven rain damage, regardless of whether an opening is made by the wind." *Id.* § 8B (currently codified as amended at Tex. Ins.Code Ann. § 2210.208).

---

**1.** I agree with the majority that damage directly caused by rain may often be distinguished from damage directly caused by wind, fire, and earthquake. Under the policy, however, rain will never cause covered damage unless there is first wind, fire, or an earthquake to allow in the rain. Rain damage can thus always be attributed to the Covered Cause of Loss that caused the opening, and there is no need for the policy to recognize rain as a uniquely covered event or for the insured to bear the burden of distinguishing damages in each case.

**2.** The Texas Legislature recently reorganized and recodified significant portions of the insurance code such that the cited provision is now codified at Tex. Ins.Code Ann. § 2210.001. *See* 2005 Tex. Sess. Law Serv. ch. 727, § 2.

In light of this context, I would find that a reasonable observer knowledgeable of insurance practices in Texas would view damage caused by rain entering through a wind-blown opening as windstorm damage and would view a "wind deductible" as applying to the windstorm-protection aspects of the policy. While Texas law supports use of the *contra proferentum* rule for ambiguous policies, "[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally," such that "the primary concern ... is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). A contract is not ambiguous if "it can be given a definite or certain legal meaning," and in determining whether the contract is ambiguous, a court must look "at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* Courts should thus consider the commercial context of the transaction, including the customs and usage in effect in the industry. *See Southwestern Bell Tel. Co. v. Pub. Utility Comm'n,* 208 F.3d 475, 482 (5th Cir.2000); *Sun Oil (Del.) v. Madeley,* 626 S.W.2d 726, 731 & n. 5 (Tex.1981); *GTE Southwest, Inc. v. Pub. Utility Comm'n,* 102 S.W.3d 282, 295 (Tex.App.2003); *Intratex Gas Co. v. Puckett,* 886 S.W.2d 274, 278 (Tex.App.1994). In light of the scope and nature of windstorm insurance in Texas, I would find that the policy in this case has a definite and certain legal meaning and that the application of the wind deductible to loss caused by rain entering through a wind-created opening is clear and consistent with the parties' intent as expressed in their written agreement.