Dorothy Ruth DENSMORE, Administratrix of the Estate of Robert Densmore, Deceased

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Garnishee.

Civ. A. No. 63-719.

United States District Court
W. D. Pennsylvania.

Sept. 23, 1963.

Ludvick Zupancic, James A. Ashton, Gerald N. Zickind, Pittsburgh, Pa., for plaintiff.

William A. Challener, Jr., Pittsburgh, Pa., for garnishee.

GOURLEY, Chief Judge.

This is an attachment garnishee proceeding against the liability insurance carrier of a judgment debtor in an action arising out of a Pennsylvania motor vehicle accident.[1]

The following issues or questions are presented:

(1) Was the liability insurance policy in full force and effect on the date of the accident? The answer is "Yes."

(2) Did the terms and provisions of the insurance policy extend coverage to the insured on the date of the accident? The answer is "Yes."

## HISTORY

At the time the policy was issued, the law in the State of New York required a person who desired to operate a motor vehicle to secure liability and property insurance coverage. Coverage was secured in accordance with the law of said state, and the defendant in this proceeding was required to issue said policy. An agent was secured by the insured solely for the issuance of the policy and

1. Civil Action 60–42 involved an automobile collision in Pennsylvania. Verdict and judgment were entered in favor of plaintiff and against Joseph Rudolph [sometimes referred to as Rudolph Joseph] (insured of defendant in Civil Action 63–719) on May 22, 1961, in the amount of $21,808.14 under the Survival Statute and $54,455.79 under the Wrongful Death Statute, or a total of $76,263.93.

premium payment made. Subsequent thereto, insurance carrier and the limited agent of the insured endeavored to cancel the policy. Shortly after the policy was issued, insured was involved in an accident and completely demolished said vehicle which was sold for junk. Insured was confined to jail in New Jersey. After discharge from the jail, the insured stole an automobile, drove it to Pennsylvania, and became involved in the accident of October 1, 1959, which was the basis for the judgment rendered in Civil Action No. 60–42 in this Court.

## DISCUSSION

I. *Was the policy canceled in accordance with the law of New York?*

■ Under the financial responsibility law of New York, no person is permitted to operate a motor vehicle without securing an automobile liability insurance policy, and the intent and purpose of the law is to prohibit any person from operating any motor vehicle without said coverage in order to protect the public from persons who are subject to tortious conduct arising out of the operation of a motor vehicle.[2]

■■ When the policy was secured through an agent in the State of New York, the purpose of the agency was limited solely to the issuance of the policy. The contention that the efforts of the agent to cancel the policy constitutes a cancellation on the legal thesis that the agency to issue the policy gives a right to cancel must fail. The law is settled that an agent who is secured for a specific purpose is not an agent for any other purpose. Restatement (Second), Agency § 106 (1958).

Since the agent had no communication in any way whatsoever with the insured after the policy was issued and the premium was paid in full, the authority of the agent was terminated once the policy was issued. I, therefore, must conclude that the insured agent had no authority to cancel the policy.

II. *Did the insurance company cancel the policy in accordance with the law of New York?*

■ Ten days' written notice was given and although the cancellation notice was not received, if ten days' notice was sufficient, cancellation would have been effected.

The statutes relative to the requirements which must be met for a policy to be canceled require the conclusion that twenty days' notice of cancellation is mandatory. Laws of New York, 1956, ch. 655, § 93–c; Laws of New York, 1958, ch. 661; Laws of New York, 1958, ch. 696. Therefore, the policy was in full force and effect when the accident occurred in Pennsylvania on October 1, 1959.

III. *Does coverage exist under the liability policy?*

■ The interpretation of the insurance policy requires application of the rule that it shall be construed against the party who writes the contract. E. g. Liberty Mut. Ins. Co. v. Hercules Powder Co., 224 F.2d 293 (3rd Cir., 1955).

■ Since the vehicle originally insured was destroyed in the New Jersey accident, I conclude that coverage exists under Policy Sections I and IV(a) (3) as a temporary substitute automobile, even though the vehicle was stolen. The thesis of the insurance carrier that coverage should not apply for the reason that the vehicle was stolen does not relieve the insurance carrier from liability. The Court cannot rewrite the insurance contract and there is no provision therein which relates to a stolen vehicle. The carrier could or should have specifically set forth in the insurance contract that coverage would not exist, and failure so to do does not relieve the carrier from responsibility. It should be stated that when the accident occurred in Pennsylvania, the insured was not engaged in

---

2. Laws of New York, 1956, ch. 655; Laws of New York, 1959, ch. 775, §§ 310–321, Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, §§ 310–321.

any illegal course of conduct, was not being pursued by police officers, and the accident which gives rise to the attachment garnishee proceeding occurred solely through negligence, the theft being merely incidental to the occurrence.

Insurance company also contends that there is no policy coverage for the following reasons:

A. Joseph, the insured, when applying for insurance, represented himself as being 25 years of age when he was actually 23 years of age.

B. Joseph moved from his residence without leaving a forwarding address.

C. Joseph was operating a motor vehicle beyond the area included under the policy in that he used it otherwise than to travel to and from work.

■ As to the second and third contentions, it is clear that neither precludes coverage nor voids the policy. The policy contains no provision requiring that a forwarding address be given, and the Court will not read such a requirement into the policy by implication, nor does the policy limit coverage to use while traveling to and from work. Even had such use been given in the application as the expected use, clearly there cannot have been an intent or representation by Insured that such was to be the only use. In fact, on the Application for Liability Insurance under Automobile Assigned Risk Plan, the expected usage is stated to be "pleasure," and the policy itself clearly provides in Item 6 on the Declarations page that the purposes for which the automobile is to be used are pleasure and business. Insured's use certainly qualifies as either personal, pleasure, family or business use, the policy definition of "pleasure and business." As to the contention based on the misrepresentation of age, it is the opinion of the Court that such a misrepresentation was not material and, therefore, does not void the policy.

IV. *What is the liability of the insurance company under the policy?*

It was stipulated and agreed at the time of trial that although the judgment, which is the subject of the attachment garnishee proceeding, was $76,263.93, the maximum liability was $10,000 for personal injuries and $1,000 for damage to the vehicle.

V. *Is interest recoverable from the date of judgment on May 22, 1961, or from the date of the adjudication of this proceeding?*

■ Under the facts and circumstances, the conclusion must be reached that interest at six per cent, which is the legal rate in Pennsylvania, is required from the date of judgment in Civil Action No. 60–42. The insurance carrier had knowledge of Civil Action No. 60–42 and elected not to defend or enter an appearance. As a result thereof, default judgment as to liability was entered against the insured for failure to appear or answer, and the action proceeded to trial as to damages before a jury.

The conclusion must be reached that interest is due at six per cent on the amount of $11,000 from May 22, 1961. The Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Rudolph Joseph, a citizen of the State of New York, purchased a 1948 Dodge in Port Washington, New York, on or about July 27, 1959.

2. The State of New York has what is commonly referred to as a "compulsory insurance Law" which provides, in substance, that registration plates will not be issued until such time as a certificate of insurance is obtained from the State of New York.

3. On July 27, 1959, Rudolph Joseph applied for a policy of insurance with one Everitt J. Hehn, insurance agent in the State of New York. Hehn conducted an insurance business at 51 Main Street, Port Washington, New York. Rudolph Joseph in some manner contacted Mr.

Hehn relative to securing insurance on the automobile which he purchased. Thereafter, an application for liability insurance under the New York Automobile Assigned Risk Plan was submitted to Hartford Accident & Indemnity Company and, on July 29, 1959, Policy No. 10 AZ392423 was issued to Joseph on a 1948 Dodge Sedan bearing Serial No. D 24579609.

4. Said policy provided bodily injury coverage of $10,000 per person, $20,000 per accident and property damage coverage of $5,000. Said policy covered the period from July 29, 1959, to July 29, 1960.

5. At the time Joseph applied for insurance he stated that he was 25 years of age when he was actually 23 years of age.

6. Hartford Accident & Indemnity Company was paid in full on the 11th day of August, 1959, for said policy.

7. Everitt J. Hehn received a commission for his services in the matter.

8. After the policy was issued, Joseph left the residence stated in his application, leaving no forwarding address.

9. Shortly after the issuance of the policy, Rudolph Joseph's automobile was withdrawn from normal use as a result of a wreck he had in the State of New Jersey. The same was duly destroyed for all practical intents and purposes.

10. On the 28th day of August, 1959, Hartford Accident & Indemnity Company wrote to Everitt J. Hehn requesting that he make an inquiry as to the age of Rudolph Joseph.

11. On September 10, 1959, Everitt J. Hehn responded to Hartford's inquiry advising that he had no forwarding address for Rudolph Joseph and that he was unable to locate the same, and further suggesting cancellation of the policy.

12. On September 17, 1959, Hartford Accident & Indemnity Company canceled Rudolph Joseph's insurance policy, effective date September 29, 1959, and advanced as a reason, "canceled at your request."

13. Rudolph Joseph did not at any time request cancellation of his policy.

14. Rudolph Joseph did not authorize Everitt J. Hehn at any time to request cancellation of his policy.

15. Hartford's reason for cancelling was not non-payment of premium.

16. The statements made by the insured, Rudolph Joseph, as to age and use of his motor vehicle were not material misrepresentations which voided Policy No. 10 AZ392423.

17. The actual use of the automobile involved in the accident was a use contemplated under the policy.

18. Everitt J. Hehn, in requesting cancellation of the policy, was not acting as agent for Joseph and was not his agent.

19. On the date of the accident, less than twenty days' notice of cancellation of the insurance policy had been given.

20. On October 1, 1959, Rudolph Joseph was operating a motor vehicle owned by Anthony Sorrentino, 46 Spring Street, Elizabeth, New Jersey, without Mr. Sorrentino's consent, and was involved in an accident on Route 51, Allegheny County, Pennsylvania, resulting in the death of Robert Densmore.

21. The accident was an incidental effect of the illegal act of Joseph and was not a direct result of the illegal act.

22. Rudolph Joseph's Hartford Insurance Policy was in full force and effect on October 1, 1959, inasmuch as the required twenty days' notice of cancellation had not been given by the insurer to the insured.

23. The ART. IV(a) (3) definition on Automobile includes an automobile not owned by the named insured while temporarily used as a substitute for the described automobile when the described automobile is withdrawn from normal use, because of, among other things, loss or destruction.

24. Rudolph Joseph's automobile was in fact a temporary substitute automobile as defined in ART. IV(3) of the policy.

25. Suit was instituted in the United States District Court for the Western District of Pennsylvania at Civil Action No. 60–42 and a judgment was entered against Rudolph Joseph in the sum of $76,263.93.

26. Adequate notice of the accident of October 1, 1959, was given to the insurance company.

27. Policy No. 10 AZ392423 was in effect when the accident occurred and said policy provided coverage for Joseph's liability, limited to the policy limits.

28. The liability of garnishee is $10,000 on the personal injury claim and $1,000 on the property damage claim, or a total of $11,000.

## CONCLUSIONS OF LAW

1. Jurisdiction exists in this Court.

2. Policy No. 10 AZ392423 issued by the Hartford Company to Joseph Rudolph was a binding contract as of October 1, 1959, and was not canceled by either party or their agents under New York statutory law.

3. The statements made by the insured, Joseph Rudolph, as to age and use of his motor vehicle were not material misrepresentations which voided Policy No. 10 AZ392423.

4. Request for termination of the insurance policy by one Everitt J. Hehn is not legally deemed a request on the part of the insured for cancellation of his liability insurance policy.

5. The use of the automobile involved in the accident was a use contemplated under the policy.

6. Everitt J. Hehn was not an agent of Joseph.

7. The automobile that was being driven by the insured on October 1, 1959, was a replacement vehicle as contemplated by the language of the insurance policy and the destruction of the insured's vehicle made said insurance have application to the vehicle which the insured was driving at the time of the accident.

8. Whether or not the automobile driven by Joseph Rudolph on or about October 1, 1959, was being driven with the permission of the owner is immaterial to whether or not coverage existed under said insurance policy.

9. Under the terms of Policy No. 10 AZ392423, Joseph Rudolph was fully insured despite the fact that the automobile driven by Joseph Rudolph on October 1, 1959, was not specifically described therein.

10. The fact that Joseph Rudolph moved without leaving a forwarding address does not constitute a violation of the policy which would result in its termination.

11. The laws of the State of New York in effect on October 1, 1959, provided for a twenty-day notice of termination to the insured by the insurer, except where the cancellation was for non-payment of premium in which case ten days' notice was sufficient.

12. The Hartford Accident and Indemnity Company failed to give twenty days' notice of cancellation of the liability insurance policy to Joseph Rudolph as required under New York law at the time that the cancellation notice was given.

13. Policy No. 10 AZ392423 was in effect when the accident occurred and provided coverage for Joseph's liability, within the policy limitations.

14. Interest is payable from the date of the judgment against Joseph and not merely from the date judgment is entered in this proceeding.

## ORDER

And now, this 23rd day of September, 1963, judgment is entered in favor of the plaintiff, Dorothy Ruth Densmore, Administratrix of the Estate of Robert Densmore, deceased, and against garnishee, Hartford Accident & Indemnity Company, in the amount of $11,000 plus costs plus six per cent interest on $11,000 from the date of judgment in Civil Action No. 60–42, May 22, 1961.