MINORA, J.,
The court has before it the County of Lackawanna’s motion for post trial relief along with its supplementary brief and reply brief. This motion is opposed by H.A.R.I.E. in their answer, supporting brief and sur reply brief as well as opposed by defendant Verrastro by answer and brief. Judgment in favor of defendant Verrastro has been entered by separate order of this court dated April 14, 2015.
The court entertained extensive argument by able and well prepared counsel on March 26, 2015. Previously on November 6, 2014, the court wrote an extensive forty-four (44) page decision and order following trial without jury pursuant to Pa. R.C.P. 1038. That decision contained twenty-six (26) undisputed stipulations of fact.
Additionally, it also contained the court’s one hundred and nine (109) findings of fact and conclusions of law. The entire November 6, 2014 decision and order is *411 incorporated herein by reference and will not be restated here.
POST TRIAL RELIEF ISSUES
The two issues raised by the County of Lackawanna in their post trial motions are stated as follows:
1. The court erred in concluding that Durkin had authority to cancel the H.A.R.I.E. policy and, therefore, the court should amend its findings and conclude that the H.A.R.I.E. policy covering the amphitheater was in full force and effect at the time when the loss occurred on February 14-15, 2007.
The County of Lackawanna (hereinafter “county”) in their supporting brief characterizes this as the “paramount issue in this case.” See county’s brief in “support of its motion for post trial relief.” p. 4. The county goes on to articulate general principles of agency law that apply to this case and this issue.
In support of their position, they cite “... a considerable body of legal authority as to the authority of an agent to cancel an insurance policy on behalf of a principal.” Id. at 4. Unfortunately, the county only cites to secondary sources such as Appleman on Insurance Law (2d.Ed. Lexis 1999); Corpus Juris Secundum (CJS); and American Jurisprudence (2d. ed. Thompson Reuters 2013). They also cite to case law from other jurisdictions.
The county candidly admits, “While not extensive the Pennsylvania case law on the issue of cancellation also provides that an agent or broker who secures a policy of insurance has no general authority to cancel a policy unless specifically authorized to do so.” Id. at 5.
*412 The first case that county cites in support of their position is Jones v. Dubuque Fire & Marine Ins. Co., 317 Pa. 144, 17 A. 208 (1934). In this 1934 case, there was an action based on a policy of insurance for a loss sustained by fire resulting in judgment for the insured.
The issues on appeal resulted from the trial court’s refusal to receive an offer of evidence. There was an admission that the Dubuque insurance policy was still in possession of the insured. This is a clear distinction from our case wherein the policy was surrendered by Durkin to H.A.R.I.E. prior to the occurrence of the loss. This distinction matters because surrender of a policy from an insured to an insurer is tantamount to a request for cancellation. See paragraphs 25-43, pages 18-23 of this court’s November 16, 2014 opinion.
An additional distinction is that in Jones, supra, there were two owners to the insured property at the time of the loss and one of the owners (Bessie Jones) did not consent to the cancellation and substitution of another insurance company’s policy. Jones, 17 A. at 208-209. Our supreme court ruled, ‘Where property is owned jointly, and so insured, one owner cannot cancel the policy of insurance and substitute another therefore without that consent of the coinsured.” Jones, Ibid. There was no such issue in this case. The offer to cancel in Jones did not attempt to show the consent of both owners.
In this context of a retained policy without the consent of both owners the court stated, “An agent who secures a policy of insurance has no general authority to cancel the policy and substitute another therefore, unless specifically authorized to do so. Jones. Ibid.
The statement quoted does not deal with our facts of a *413 previously surrendered policy and no dispute of authority for cancellation among co-owners before the loss occurred. Therefore, the court rules that the 1934 case cited is not applicable herein.
The county’s next case cited is Hendricks v. Continental Ins. Co. of City of New York, 121 Pa. Super. 390, 183 A. 363 (1936). This 1936 case is clearly not applicable to the facts in our case and the citation of it as such is quite disturbing to this court and counsel’s obligation of candor to the tribunal.
In our case, the county, the insured through its agent Durkin, surrendered the policy to H.A.R.I.E. and initiated the cancellation of the policy erroneously thinking that the Toyota Pavilion was also sold when Montage Mountain was sold to Sno Mountain.
In Hendricks, supra., at 393, 364, the superior court quite clearly stated in its recitation of the facts, “On March 13, 1934 the defendant company mailed to the plaintiff from its Philadelphia office, written notice of cancellation of the policies.” Hendricks, 183 A. 393-394. emphasis added. All parties and this court are aware of the state of the law that different standards apply when an insurance policy is cancelled at the initiation or instance of the insurance company (H.A.R.I.E. herein) then when cancelled at the insured’s initiation or instance (County herein): See court’s November 6, 2014 opinion at pages 27-31, paragraph 62-72. See also Coppola v. Insurance Placement of Pennsylvania, 386 Pa. Super. 413, 415, 563 A.2d 134 (1986); Scott v. Southwestern Mutual Life Association, 436 Pa. Super 242, 642 A.2d 587, 590 (1994).
Although not binding on this court, we also reviewed county’s citation to H.R. Woolridge Co. v. Smith, 5 Pa. *414 D.&C.3d 230 (1978), a case out of Clearfield County. This case involved a dispute between the plaintiff, an insurance agency and the defendant an insured. Significantly, no insurance company was involved in this dispute, so it is factually distinct from our case.
The case revolved around an insured not reimbursing his agent who advanced premium payments on the insured’s behalf. The two types of insurance involved were workman’s compensation and auto coverage.
The court in Woolridge, supra, states that the plaintiff H.R. Woolridge Co. as an insurance broker, “is considered by law to be an agent for the insured.” Woolridge, 5 Pa. D.&C. at 234. The court goes on to state, “courts tend to give a broker broad authority in acting to meet a client’s needs.” Woolridge, Ibid.
However, in Woolridge, the court states, “...while a broker’s authority to purchase insurance is broad, his authority to cancel is quite narrow.” Id. at 235. The stated rationale for such narrow restriction on an agent (not a company) cancelling an insurance policy without explicit authority exists because, “the trend seems to thwart any possibility that an individual maybe stripped of insurance coverage against his will” Id.
Well as noted above, the possibility that the county can be stripped of coverage against their will is non-existent when the county initiates cancellation of coverage and does so at its own instance and initiative. Anticipating the county’s retort that such a stripping of coverage actually occurred relative to the Toyota Pavilion, we would reply that such occurred due to the county’s agent’s error and not due to lack of notice or “against their will.” Ignorance of an error cannot be equated with an affirmative act against *415 will.
Qualitatively, there is another distinction in the types of insurance coverage involved. Workman’s compensation and automobile coverage are required by law. “Such coverage is required by law, and therefore special care is taken in instances where insurance is required to protect an individual from unjustly losing his right to do business.” Woolridge. Ibid. Furthermore,
“Given the requirement of the statutes and the trend of the case law, plaintiff, as the insurance broker charged with caring defendant’s insurance needs, would have subjected himself to a possibility of greater lawsuit had he failed to provide coverage.”
Id. at 236.
Similarly, in our case, and as noted in our previous opinion of November 6, 2014, once Durkin erroneously believed that all county land was sold to Sno Mountain, he believed that the comity no longer had an insurable interest after alienation of its realty ownership. If Durkin failed to cancel insurance coverage under his erroneous belief of a total sale, Durkin could also have subjected himself to the possibility of lawsuit for his non-cancellation of a policy without an insurable interest. See paragraph 107 and 108 at page 42 of the court’s November 6,2014 opinion herein.
So despite the Woolridge case representing non-binding precedent from Clearfield County, we determine that under analysis its factual distinctions make it unpersuasive to this court.
Finally, hidden among case law “from other jurisdictions” on pages five (5) and six (6) of county’s brief in support of its post trial motion, we find the case *416 of Densmore v. Hartford Acc. & Indem. Co., 221 F.Supp. 652 (1963). This is a case out of the United States District Court for the Western District of Pennsylvania, thus having some connection to our Commonwealth. In reality, the case deals with the New York State Financial Responsibility Law and the Vehicle and Traffic Law of New York state.
In Densmore, the United States District Court for the Western District of Pennsylvania had to decide an automobile liability insurance coverage dispute under the Financial Responsibility Law of the State of New York.
The court was faced with an automobile liability insurance policy which had been secured through an agent in the state of New York. The court determined that the purpose of the agency was limited solely to the issuance of the policy. Therefore, court concluded that the efforts of the agent to cancel the policy must fail.
County cites this case for the proposition that, “the legal thesis that an agency to issue the policy gives the right to cancel must fail.” First of all, this is only a partial quote. In Densmore v. Hartford Acc. & Indem. Co., 221 F.Supp. 652, 654 (1963) the full sentence reads as follows: “The contention that the efforts of the agent to cancel the policy constitutes a cancellation on the legal thesis that the agency to issue the policy gives a right to cancel must fail. The law is settled that an agent who is secured for a specific purpose is not an agent for any other purpose. Restatement (Second), Agency §106 (1958).”
The factual premise for the court’s conclusion was:
“Since the agent had no communication in any way whatsoever with the insured after the policy was issued *417 and the premium was paid in full, the authority of the agent was terminated once the policy was issued. I therefore must conclude that the insured agent had no authority to cancel the policy.”

Ibid.

These facts could not be less applicable to our case. In our case, Durkin managed this book of insurance on behalf of the county for multiple years. Durkin was performing other tasks besides simply securing coverage. As an example, Durkin secured statements of value as to assets and handled the premium adjustments upon termination of the policies.
Additionally, Durkin was in communication with county’s transaction attorney James Tressler as well as in repeated communication with county’s insurance coordinator Dominic Verrastro. It was this joint communication which erroneously determined that the policies should be cancelled because they thought a total sale had taken place at Montage. This is what was communicated to H.A.R.I.E.
Our facts are not seriously comparable to the facts in Densmore. Durkin did not initially have a limited agency and Durkin did not have a subsequent absence of further tasks and communication as was the case in Densmore. For these reasons, we are unpersuaded by the agency based case law cited by county.
We are further unpersuaded by county’s reference to the Pennsylvania County Code and the Pennsylvania Sunshine Act. As was noted in our initial opinion, there has never been an issue that this sale of Montage Mountain was authorized at a public meeting. We believe inherent in *418 that authorization is the authority to perform all related tasks necessary to concluding the authorized sale.
As indicated in our opinion of November 6, 2014, the court sat as the finder of fact in this case and came to the findings of fact and conclusions of law noted therein.
Nothing in the revisited factual arguments raised later in county’s brief has caused the court to reverse its earlier determinations regarding its findings relative to Durkin’s agency.
Accordingly, the county’s allegations of error by the court in our conclusion that Durkin had the authority to cancel the H.A.I.R.E. policy are rejected, dismissed and denied and we stand by our earlier conclusions as noted in the original November 6, 2014 opinion.
2. Issue two states that the court should conclude that the H. A.R.I.E. policy should be determined to be in effect as of the date of loss because H. A.R.I.E. did not follow the cancellation procedures set forth in the policy.
The allegation is that the trial court has rewritten the insurance policy in a manner not intended by the parties to the prejudice of the county trumping the express provisions of the contract.
If this characterization is so, the court has not rewritten the contract, the cases and the statutes governing this situation have so done.
County begrudgingly now seems to concede that different rules apply when an insured like county, commences or initiates cancellation of an insurance policy verses when the insurer insurance company like H.A.R.I.E. starts the cancellation process. The court did *419 not rewrite the policy in this regard, the cases and the statutes did.
As was stated in Scott v. Southwestern Mut. Fire Ass’n, 436 Pa. Super. 242, 647 A.2d 587 (1994):
“When read together the decisions in Amfeld, Jones. Scheel, Coppola and Blasy, form the following legal standard. As noted above, an insurance policy may be cancelled or terminated by any party to the contact, if such cancellation is provided for in terms of the policy. Strict compliance with the policy’s cancellation provisions can be waived however, when an insured’s objective intent to cancel is precise and clear.
Thus in Scott the court has summarized a line of case that delineate an insureds ability to cancel an insurance policy without strict compliance with a policy’s cancellation provisions.
From a statutory standpoint 40 P.S. §3402 entitled “grounds for cancellation” deals with midterm cancellation of a commercial property and casualty policy such as we have herein. The statutes prohibit midterm cancellations but for eight exceptions.
Exception number 40 P.S. §3402(6) states that one of the valid exceptions to the ban on midterm cancellations is if, “The insured has requested cancellation.” See paragraph 62 of November 6, 2014 opinion.
As is obvious, the statutes and the case law rewrite the policy herein and not this court.
Further, as appears in paragraph 65 of the November 6, 2014 opinion 40 P.S. § 3403(a)(3)(iii) when an insured cancels a policy written notice of cancellation is not *420 required:
“(iii) The policy was cancelled by the named insured, in which case written notice of cancellation shall not be required and coverage shall be terminated on the date requested by the insured.” Emphasis added.
Judge Johnson tells us the rationale for the above scheme in Coppola, supra., at 418, 136, wherein he states, “When the insured cancels, however, the legislature imposes no notice requirements;... The insured who cancels a policy obviously knows that he no longer has a policy. There is no need for a safeguard to guarantee that he receive affirmative evidence of this.”
The treatment of the issue of an insured’s (like county) initiating, starting or commencing cancellation of an insurance policy as treated in Scott, supra., Coppola, supra., is not only binding precedent on this court but is also legally and logically persuasive and appealing. For that reason, the court stands by its original decision in its November 6,2014 opinion. An appropriate order follows.
ORDER
And now to wit, this 20th day April, 2015, the County of Lackawanna’s motion for post trial relief is denied and dismissed in its entirety and the court reaffirms its opinion of November 6, 2014.
Further, this order shall act as a final order in the case for purposes of appeal.
Finally, this opinion and the court’s previous November 6, 2014 opinion shall operate as the court’s opinion in support of order for purposes of Pa. R.A.P. 1925.
It is so ordered.